IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

REBA MYERS and DAVID EDWARD    )
MYERS,                                    )
                                        )    Civil Action No. 5:20-cv-00068
    Plaintiffs,               )
                                        )    By: Elizabeth K. Dillon
v.                                 )        United States District Judge
                                        )
CHAD F. WOLF, ACTING SECRETARY, )
DEPARTMENT OF HOMELAND        )
SECURITY and UNITED STATES OF    )
AMERICA,                      )
                                        )
    Defendants.              )

**MEMORANDUM OPINION**

This case is before the court on defendants' motion to dismiss for lack of jurisdiction (Dkt. No. 8) and plaintiffs' motion for leave to file a first amended complaint (Dkt. No. 14). These motions have been fully briefed and are ripe for resolution. For the reasons stated below, the court will deny leave to amend and grant the motion to dismiss.

I.  BACKGROUND

Plaintiffs Reba Myers and David Edward Myers were sole shareholders, owners, and operators of Demcorp, LLC, which did business as the Dollar Stretcher in Winchester, Virginia. (Compl. 4, Dkt. No. 1.)  The Dollar Stretcher sold a variety of items including cigarettes.  (*Id.*) Demcorp, LLC was dissolved, and on April 1, 2015, Demcorp's inventory and assets were sold or transferred to the Welltown Group, Inc.  (Defs.' Br. 4, Dkt. No. 17; Agreement in Crim. Case, Dkt. No. 17-1.)  Ms. Myers was a board member of the Welltown Group, but the Myerses had no ownership interest in the company.  (Defs.' Br. 4, Dkt. No. 17.)

In 2015, federal law enforcement officers investigated the alleged trafficking of contraband cigarettes, which officers believed individuals were purchasing in Virginia and reselling in New York in a scheme to avoid taxes.  (*Id.*)  On August 17, 2015, law enforcement officers applied for and obtained multiple warrants: (1) one warrant issued by the Western District of Virginia to search and seize specific items from the Dollar Stretcher, including cigarette related packaging items ("the search warrant"); and (2) eleven seizure warrants for civil forfeiture issued by the Northern District of West Virginia, including a warrant to seize all cigarette inventory from the Dollar Stretcher for civil forfeiture ("the forfeiture warrant").[1]  (*Id.* at 4–5; Dkt. Nos. 18 at 3, 18-2, 18-3.)  The search warrant did not specifically provide for the seizure of cigarettes, but the forfeiture warrant provided for the seizure of cigarettes.  All twelve warrants were placed under seal.  (Plfs.' Br. 4, Dkt. No. 18.)

On August 18, 2015, law enforcement officers executed the search on the Dollar Stretcher.  (Compl. 5; Search Warrant 26, Dkt. No. 9-1.)  Officers seized four pallets of cigarettes and related packaging items.  The four pallets contained approximately 1,560 cartons of cigarettes.  (Compl. 5)  All of the seized cigarettes and packaging were marked with valid Virginia tax stamps.  (*Id.* at 6.)  According to the Myerses, the fair market value of the cigarettes was approximately $100,000.  (*Id.*)

In April 2017, Ms. Myers pleaded guilty to felony tax evasion in the Northern District of West Virginia, and the court sentenced her to a year and one day of imprisonment.  (Tax Evasion J., Dkt. No. 9-3.)  In addition, the Dollar Stretcher closed and Ms. Myers lost her license to sell cigarettes.  (Defs.' Br. 3, Dkt. No. 9; Dkt. No. 9-4.)

---

[1] According to the Myerses, at the time they filed their response to the government's Motion to Dismiss (Dkt. 9), the Myerses were only aware of two civil seizure warrants.  Since that time, an additional nine related civil seizure warrants have been identified and unsealed.  (Dkt. No. 18 at 4 n.3.)

On October 3, 2017, an indictment was filed in the Northern District of West Virginia charging Reba Myers and others with conspiracy to evade tobacco taxes and trafficking in contraband cigarettes.  (Compl. 6; Dkt. No. 9-5.)  Plaintiff David Edward Myers was not charged in the indictment.  (*Id.*)  The indictment included a forfeiture notice identifying the cigarettes for forfeiture upon conviction, and the government held the cigarettes for use as evidence at Ms. Myers's trial.  (Defs.' Br. 3, Dkt. No. 9; Dkt. No. 9-5.)  During the criminal proceeding, the Myerses agreed that "the inventory and other assets of Demcorp, Inc., including cigarettes, were transferred on April 1, 2015 to the Welltown Group, Inc."  (Dkt. No. 17-1 at 2.)  In addition, Ms. Myers filed a motion to suppress the cigarettes as evidence and a motion for a *Franks* hearing, which the court denied.  (Dkt. No. 17-2; Oral Order, *United State v. Myers*, ECF No. 249, No. 3:17-CR-70 (N.D.W. Va. Filed May 8, 2018).)  "Myers never filed a motion under Federal Rule of Criminal Procedure 41(g) for the return of the cigarettes after seizure." (Defs.' Br. 4, Dkt. No. 9.)

In November 2018, the Northern District of West Virginia held a jury trial on the contraband cigarette charges.  (Compl. 6; Defs.' Br. 4, Dkt. No. 9.)  The government used the seized cigarettes as evidence.  (Defs.' Br. 4, Dkt. No. 9.)  The proceeding resulted in a mistrial and dismissal of the case with prejudice, as well as an acquittal for Ms. Myers.  (*Id.*; Compl. 6.)

On October 28, 2019, the government notified Ms. Myers that it was not seeking forfeiture of the four palettes of cigarettes that it seized from the Dollar Stretcher.  (Compl. at 8.)  According to the government, Customs and Border Patrol again sent letters to Ms. Myers in April 2020 seeking information on how to return the cigarettes to Myers.  (Defs.' Br. 4.)  However, Myers refused to accept the cigarettes.  The Myerses argue, and the government does not dispute, that the shelf-life of an unopened pack of cigarettes is approximately 12 months.

(Compl. 8; Defs.' Br. 3–4.)  Therefore, by fall 2019, the seized cigarettes were "at least five years old, [we]re stale, and c[ould not] be sold."  (Compl. 7.)

On November 22, 2019, Ms. Myers filed an administrative tort claim with the Department of Homeland Security for the damage caused to her property.  (Compl. 8; Dkt. No. 9-4.)  On April 14, 2020, the Department of Homeland Security denied Ms. Myers's administrative claim.  (Compl. 8; Dkt. No. 9-7.)

On October 13, 2020, Ms. Myers, along with Mr. Myers, filed this suit against the government and the Acting Secretary of the Department of Homeland Security.  Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80, plaintiffs seek relief in the amount of the fair market value of the seized cigarettes, plus costs and fees.  (*Id.* at 9.)

On February 17, 2021, defendants filed a motion to dismiss for lack of subject matter jurisdiction.  (Mot. to Dismiss, Dkt. No. 8.)  The government argues that it is immune from suit because the Myerses' claim is barred by the detention of goods exception in § 2680(c).  (Defs.' Br. 5, Dkt. No. 9.)  The Myerses disagree, arguing that a provision re-waiving sovereign immunity is applicable.  (Pls.' Br., Dkt. No. 10.)

On April 14, 2021, plaintiffs filed a motion for leave to amend their complaint based on new information they obtained from the defendants' motion to dismiss.  (Mot. to Amend, Dkt. No. 14.)  Specifically, plaintiffs seek to add four new *Bivens* claims against four new defendants: (1) Special Agent Julius Grady; (2) Special Agent Sara Brady; (3) Special Agent Dennis Scheffel; and (4) John Doe(s), all employed by Homeland Security Investigations and sued in their individual capacities.  (Dkt. No. 14-2.)  On June 1, 2021, after an extension of time to file, the government filed a response in opposition to the motion for leave to amend.  (Dkt. No. 17.)

## II. DISCUSSION

**A. Motion for Leave to Amend**

*1. Standard of Review*

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . ."  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. Pro. 15(a)(2).  Moreover, "[t]he court should freely give leave when justice so requires."  *Id.*  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Id.*

"A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'"  *Just Puppies, Inc. v. Frosh*, 457 F. Supp. 3d 497, 508 (D. Md. 2020) (quoting *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 2228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986))).  "A proposed amendment is also futile if the complaint, as amended, fails to state a claim upon which relief could be granted."  *Id.* (citing *Save Our Sound OBX*, 914 F.3d at 228).  "Thus, a court may disallow amendment where 'the new claim would not have survived a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).'"  *Id.* (quoting *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019)) (citing *Martin v. Duffy*, 858 F.3d 239, 247–48 (4th Cir. 2017); *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010)).  To survive a motion under Rule 12(b)(6), a

complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 687–80 (2009).

At issue in this case is whether the Myerses' amendment would be futile. The Myerses seek to add *Bivens* claims against individual officers who swore out affidavits in support of the search and seizure warrants or participated in the search or seizure of cigarettes from the Dollar Stretcher. (Dkt. No. 14-2 at 15.) Specifically, the Myerses seek to add the following Fourth Amendment claims: (1) an officer's affidavit in support of the seizure warrants contained false statements and mischaracterized the appropriate legal standard; (2) officers seized the Myerses' property as substitute assets prior to filing criminal charges in violation of 28 U.S.C. § 2461(c); (3) officers lacked legal authority to hold the cigarettes after abandoning forfeiture; and (4) officers acted contrary to law by restraining substitute assets prior to trial. (*Id.* at 15–16.) The government argues, among other things[2], that addition of these *Bivens* claims would be futile because the claims are an improper extension of the *Bivens* remedy. (Dkt. No. 17 at 7–13.)

## 2. Bivens Remedy Unavailable

"A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors." *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971)). To determine whether a *Bivens* claim may proceed, the court must evaluate: (1) whether the claims are presented in a new *Bivens* context; and (2) if so, whether "special factors" counsel hesitation in extending the *Bivens* remedy. *Annappareddy v. Pascale*, 996 F.3d 120, 130

---

[2] The government also argues that the Myerses lack standing to bring any of their FTCA or *Bivens* claims because the Myerses did not own the cigarettes at issue. (Defs.' Br. 3, Dkt. No. 17.) Given the court's dismissal of the FTCA claims for lack of jurisdiction and the court's finding that the *Bivens* claims would be futile, it is not necessary to resolve the standing issue.

(4th Cir. 2021) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)).  The Supreme Court has

allowed the *Bivens* remedy in only three contexts: (1) a Fourth Amendment violation related to

use of unreasonable force during warrantless search and seizure, *Bivens*, 403 U.S. at 396–97; (2)

a violation of equal protection component of Fifth Amendment Due Process Clause, *Davis v.*

*Passman*, 442 U.S. 228, 248–49 (1979); and (3) a violation of Eighth Amendment Cruel and

Unusual Punishments Clause, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980).  *Annappareddy*, 996

F.3d at 133.  Expanding the *Bivens* remedy to situations outside these three contexts is a

disfavored judicial activity.  *Id.* (citing *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021)

(quoting *Abbassi*, 137 S. Ct. at 1857)).

   In *Annappareddy*, the Fourth Circuit evaluated whether the *Bivens* remedy is available

"where investigators and prosecutors allegedly participated together in a long-running scheme to

fabricate and destroy evidence during a criminal investigation and prosecution," including

providing false statements in applying for a warrant.  *Id.* at 127, 134.  The court found that

extending the *Bivens* remedy to a Fourth Amendment violation involving a warrant would

present a new context.  *Id.* at 135.  The court reasoned that, "although *Bivens*, too, was a Fourth

Amendment case, '[c]ourts do not define a *Bivens* cause of action at the level of the Fourth

Amendment or even at the level of the unreasonable-searches-and-seizures clause.'"  *Id.*

(quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).  Rather, "[w]hat *Bivens* involved

was the Fourth Amendment right to be free of unreasonable warrantless searches and seizures;

[and *Annappareddy*], by contrast, involves searches and a seizure conducted with a warrant."  *Id.*

Because "the Fourth Amendment sharply distinguishes between with-warrant and warrantless

searches" the court reasoned that the claims in *Annappareddy* presented a new context.  *Id.*  The

Fourth Circuit also found "it significant that the search warrants in [*Annappareddy*] ran against

[a] corporate entity . . . and not the plaintiff himself." *Id.* at 136.  "There appear to be no cases –

in the Supreme Court or any other court – approving a *Bivens* claim for acts taken against a

corporate entity . . . [likely because] [s]uch a claim might well raise complex issues not at issue

in *Bivens*." *Id.* at 137 (citing *Cf. Life Savers Concepts Ass'n of Cal. v. Wynar*, 387 F. Supp. 3d

989, 998–99 (N.D. Cal. 2019)).

      With regard to the second prong of the *Bivens* analysis, "[t]he focus of the special-factors

inquiry is 'whether the Judiciary is well suited, absent congressional action or instruction, to

consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*

(quoting *Earle*, 990 F.3d at 779 (quoting *Abbasi*, 137 S. Ct. at 1858)).  "[T]he decision to

recognize a damages remedy requires an assessment of its impact on governmental operations

systemwide." *Abbasi*, 137 S. Ct. 1843, 1858 (2017).  "Those matters include the burdens on

Government employees who are sued personally, as well as the projected costs and consequences

to the Government itself when the tort and monetary liability mechanisms of the legal system are

used to bring about the proper formulation and implementation of public policies." *Id.*  For

example, Fourth Amendment claims that require courts to interfere in the executive branch's

investigative and prosecutorial functions counsel hesitation in extension of the *Bivens* remedy.

*Annappareddy*, 996 F.3d at 137.  In addition, "if there is an alternative remedial structure present

in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of

action." *Abbasi*, 137 S. Ct. 1843, 1858 (2017).

      Here, the Fourth Amendment *Bivens* claims that the Myerses seek to add are like those in

*Annappareddy*.  The Myerses' *Bivens* claims all arise out of officers' search and seizure of

cigarettes pursuant to a warrant, and the subsequent restraint of that property.  As the Fourth

Circuit held in *Annappareddy*, a Fourth Amendment violation involving a search or seizure

pursuant to a warrant presents a new *Bivens* context.  The Myerses argue that their case is distinct from *Annappareddy* because it involves a challenge to the warrantless seizure of property after forfeiture was abandoned.  (Dkt. No. 18 at 11.)  However, this argument is unpersuasive.  The cigarettes at issue were seized pursuant to a warrant; thus, even if officers continued to hold the cigarettes after forfeiture was abandoned, this case presents a new context in which to apply the *Bivens* remedy.  Moreover, as in *Annappareddy*, the forfeiture warrants in this case were issued against Welltown Group, Inc., not the Myerses, which further suggests that the claims present a new *Bivens* context.

In addition, special factors counsel against extension of the *Bivens* remedy in this case. First, alternative remedies exist.  Ms. Myers filed a motion to suppress the cigarette evidence and moved for a *Franks* hearing during her criminal case.  (Dkt. No. 17 at 11.)  The court denied those motions.  (*Id.* (citing *United State v. Myers*, ECF No. 249, No. 3:17-CR-70 (N.D.W. Va. Filed May 8, 2018)).)  The Myeres correctly note that neither the motion to suppress nor the *Franks* hearing could have resulted in return of the cigarettes to the Myerses.  However, so long as a plaintiff has "an avenue for *some* redress," an alternative remedy can preclude a *Bivens* claim. [3]  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 534 U.S. 61, 69 (2001).  Second, as in *Annappareddy*, the Myerses' Fourth Amendment claims involve inquiry into officers' decisions to seek warrants and seize assets for forfeiture and evidentiary purposes.  Such inquiry may require courts to interfere in the executive branch's investigative and prosecutorial functions, which weighs against expansion of the *Bivens* remedy.  Therefore, the court will deny the

---

[3] The government also argues that the Myerses could have filed a motion pursuant to Federal Rule of Criminal Procedure 41(g) for return of the cigarettes if unlawfully seized.  The Myerses disagree, arguing that a Rule 41 motion is unavailable while civil forfeiture is pending.  (Dkt. No. 18 at 11 (citing *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999); *United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996)).)  The record is unclear as to when the government abandoned civil forfeiture and, thus, whether the Myerses could have pursued a Rule 41 motion.  (Dkt. No. 9 ("once forfeiture for purposes of substitute assets was abandoned, the Government continued to hold the cigarettes for use as evidence").)

Myerses' motion to amend the complaint because the *Bivens* remedy is unavailable for the claims the Myerses seek to add, and, thus, amendment is futile.

## B. Motion to Dismiss

### 1. Standard of Review

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based on a court's lack of subject matter jurisdiction, which has been defined as 'authority [of a court] to adjudicate the type of controversy involved in the action.'" *Farquhar v. United States*, No. 1:07CV1033, 2007 WL 4233492, at *2 (E.D. Va. Nov. 28, 2007) (quoting *Carlisle v. United States*, 517 U.S. 416, 434–35 (1996) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 11 (1982))).  "A 12(b)(1) motion to dismiss may be made at any time by any party or raised sua sponte by the court." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).  "The party asserting subject matter jurisdiction bears the burden of proving jurisdiction exists." *Id.* (citing *Capital One Fin. Corp. v. Drive Fin. Serv., L.P.*, 434 F. Supp. 2d 367, 371 (E.D. Va. 2006)).  "A court must regard the pleadings as mere evidence on the issue of jurisdiction, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*  "Further, a court should only grant a 12(b)(1) motion to dismiss if the material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law." *Id.* (citing *Nelson v. USPS*, 189 F. Supp. 2d 450, 454 (W.D. Va. 2002)).

### 2. The Detention of Goods Exception & the Re-waiver Provision

"In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (citing 28 U.S.C. § 1346(b)(1)).  "[T]he FTCA authorizes 'claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)).  "The FTCA exempts from this waiver certain categories of claims." *Id.* (citing 28 U.S.C. §§ 2680(a)–(n)).  Among those exemptions is an exemption for the detention of goods. *Id.* (citing 28 U.S.C. § 2680(c)).  Under the detention of goods exception, the government does not waive sovereign immunity for tort claims arising from "the detention of any goods, merchandise, or other property by any . . . law enforcement officer."  28 U.S.C. § 2680(c).

However, Congress has created an exception to the exception, sometimes known as the re-waiver provision, which applies to goods detained for the purpose of forfeiture.  In the Civil Asset Forfeiture Reform Act of 2000, Congress amended § 2680(c) to provide that the § 1346(b) waiver of sovereign immunity applies to:

> [A]ny claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—
> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
> (2) the interest of the claimant was not forfeited;
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.  28 U.S.C. § 2680(c)(1)–(4).

The statute does not explicitly address whether the United States retains sovereign immunity where goods are seized for the dual purpose of forfeiture and evidence.  The Fourth Circuit has not addressed this question, but other circuits have held that the United States retains sovereign immunity unless the detained goods were seized for the sole purpose of forfeiture. *See Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) ("hold[ing] that the re-waiver of sovereign immunity in 28 U.S.C. § 2680(c)(1)-(4) applies only to property seized solely for the purpose of

11

forfeiture, even if the government had in mind, and later pursued, judicial forfeiture of property seized initially for a legitimate criminal investigative purpose."); *Smoke Shop, LLC, v. United States*, 761 F.3d 779, 784, (7th Cir. 2014) ("We now formally adopt *Foster*'s sole-purpose test in interpreting the re-waiver provision."); *Shigemura v. United States*, 504 F. App'x 678, 680 (10th Cir. 2012) ("we find *Foster* to be persuasive").  At least one court in the Fourth Circuit has applied the sole-purpose test in a similar context.  *Starr Indem. & Liab. Co. v. United States*, No. CV CCB-18-3326, 2019 WL 4305529, at *1 (D. Md. Sept. 11, 2019).

Applying the test from *Foster*, the Myerses argue that the sole purpose of the government's seizure of the cigarettes was for forfeiture because the government seized the cigarettes pursuant to a civil forfeiture warrant.  However, the government initially seized the cigarettes while at the same time executing search and seizure warrants during a criminal investigation into cigarette trafficking.  Once it abandoned forfeiture, the government continued to hold the cigarettes as evidence for trial.  *See Starr Indem.*, 2019 WL 4305529, at *4 (finding that the seizure of an aircraft was not for the sole purpose of forfeiture because the initial search warrant "demonstrates that the government had probable cause to believe the aircraft was involved in illegal activity" and a later search warrant "suggests that, almost two months later, the government was still investigating the aircraft's alleged connection to a crime").  The government acknowledges that the search warrant did not expressly provide for the seizure of the cigarettes, but, even so, the forfeiture warrant covered the cigarettes.   The failure to include cigarettes in the search warrant was merely an oversight and is not evidence that the cigarettes were unconnected to the criminal investigation.  Importantly, an invalid seizure does not trigger the FTCA's re-waiver provision.  *Id.* ("Whether the government exceeded the scope of the . . . search warrant in seizing the aircraft is not the issue.").

12

As the government notes, some seizures may be for the sole purpose of forfeiture.  A federal agency may, for example, seize assets for administrative forfeiture without a criminal investigation.  By contrast, in this case, the cigarettes were seized in connection with an ongoing criminal investigation, then retained for use in a criminal trial.  Therefore, under the sole purpose test, the government did not re-waive its sovereign immunity.

## III.  CONCLUSION

For the reasons stated above, the court will deny plaintiffs' motion for leave to amend the complaint (Dkt. No. 14) and grant defendants' motion to dismiss (Dkt. No. 8).[4]  The court will issue an appropriate order.

Entered: September 21, 2021.


/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge


---

[4]  The government requests dismissal with prejudice, but dismissal under Rule 12(b)(1) is without prejudice because it is not a ruling on the merits.  *See De Baca v. United States*, 399 F. Supp. 3d 1051, 1165 (D.N.M. 2019) ("[A]ll dismissals for lack of jurisdiction, including those for a failure to establish a waiver of sovereign immunity under the FTCA, should be without prejudice.").